**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| AEL FINANCIAL, LLC, an Illinois limited liability company | ) ) ) | **FILED: MAY 01, 2008** **08CV2491   AEE** **JUDGE PALLMEYER** Case No.**MAGISTRATE JUDGE MASON**_____ |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge: _____ |
| LARRY E. LIPPEL, an individual and JOANNE LIPPEL, an individual | ) ) ) | |
| Defendants. | ) ) | COMPLAINT |

## COMPLAINT

Plaintiff, AEL FINANCIAL, LLC, an Illinois limited liability company ("AEL"), by and through its attorneys, Brian Ira Tanenbaum and John A. Benson, Jr., of The Law Offices of Brian Ira Tanenbaum, Ltd., brings this Complaint against LARRY E. LIPPEL, an individual, and JOANNE LIPPEL, an individual, (collectively, "Defendants"). In support of this Complaint, AEL states as follows:

### NATURE OF ACTION

1.     This is an action for breach of guaranty. Defendants have breached a guaranty entered into with AEL on June 21, 2006. As such, AEL seeks monetary damages from the Defendants.

### THE PARTIES

2.     Plaintiff, AEL Financial, LLC, ("AEL") is an Illinois limited liability company with its principal place of business located at 600 North Buffalo Grove Road, Buffalo Grove, Illinois 60089. AEL is engaged primarily in the business of leasing certain industrial and commercial equipment to various businesses.

3.     All members of AEL are citizens of the state of Illinois and are therefore diverse in citizenship from all defendants.

4.     Upon information and belief, Defendant, Larry E. Lippel, state of citizenship and residence is Florida.

5.     Upon information and belief, Defendant, Joanne Lippel, state of citizenship and residence is Florida.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and that the matter in controversy exceeds, exclusive of interests, costs and attorneys' fees, the sum or value of Seventy Five Thousand Dollars ($75,000.00).

7.     This Court has personal jurisdiction over the Defendants pursuant to Illinois' long-arm statute, Ill. Rev. Stat. ch. 110, para. 2-209 ("Section 209") in that each of the Defendants, made or performed a contract or promise substantially connected with the state of Illinois and thereby transacted business in Illinois by invoking the benefits and protections of Illinois law in the contractual relationship, as the Guaranty (hereinafter defined) executed by the Defendants is governed and construed by Illinois law.

8.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a).

## THE GUARANTY

9.     On June 21, 2006, AEL, as lessor, and Lippel Petroleum, Inc. ("Lippel Petroleum"), as lessee, entered into a certain Master Lease Agreement (the "Master Lease").  A true and correct copy of the Master Lease is attached hereto as Exhibit A and is fully incorporated by reference herein.

10.     The Master Lease consists of three (3) lease schedules: Lease Schedule No. 1, Lease Schedule No. 2 and Lease Schedule No. 3 (collectively, the "Lease Schedules").  A true and correct copy of Lease Schedule No. 1, Lease Schedule No. 2 and Lease Schedule No. 2 are attached hereto as Exhibits B, C and D accordingly, and are fully incorporated by reference herein.

11.     On June 21, 2006, to induce AEL to enter into the Master Lease and Lease Schedules with Lippel Petroleum, Defendants entered into a certain personal guaranty (the "Guaranty") with AEL.  A true and correct copy of the Guaranty is attached hereto as Exhibit E and is fully incorporated by reference herein.

12.     Pursuant to the Guaranty, Defendants, jointly and severally unconditionally guaranteed and promised to AEL that Lippel Petroleum will promptly perform and comply with each of its obligations contained in the Master Lease and Lease Schedules and in the event Lippel Petroleum failed to perform any obligations, monetary or otherwise, the Defendants promised to pay any and all the indebtedness from Lippel Petroleum to AEL.

13.     Since approximately January 1, 2008, Lippel Petroleum has failed to make all of its required lease payments due AEL under the Master Lease and Lease Schedules.

14.     As a result of Lippel Petroleum's defaults under the Master Lease and Lease Schedule, there is now due and owing under Lease Schedule No. 1 the sum of $51,363.50, under Lease Schedule No. 2 the sum of $32,690.37 and under Lease Schedule No. 3 the sum of $87,600.00 or the total sum due under the Master Lease of $171,653.87.

15.     Since approximately January 1, 2008, Defendants, as guarantors under the Master Lease and Lease Schedules, have failed to perform Lippel Petroleum's obligations, monetary or otherwise.

16.     In accordance with the terms of the Guaranty, the obligations of Defendants are independent of the obligations of Lippel Petroleum and a separate action may be brought or prosecuted against Defendants in the state of Illinois.

17.     AEL has fulfilled and performed all of its obligations under the Master Lease, Lease Schedules and Guaranty required of it to be performed.

## CAUSE OF ACTION
### Breach of Guaranty

AEL complains against the Defendants, and of each of them, and for a cause of action states:

18.     AEL hereby incorporates each and every allegation set forth herein in Paragraphs 1 through 17 as if more fully set forth herein.

19.     AEL and Defendants entered into the Guaranty on or about June 21, 2006.

20.     Defendants materially breached the Guaranty by failing to perform its obligations, as set forth in the Guaranty.

21.     AEL has fulfilled and performed all of its obligations under the Guaranty.

22.     Defendants breached the Guaranty without legal justification or excuse.

23.     Pursuant to the terms of the Guaranty, AEL is also entitled to recover its attorney's fees and court costs from the Defendants in connection with the enforcement of the terms of the Guaranty, Master Lease and Lease Schedules.

24.     The total sums now due under the Guaranty, Master Lease and Lease Schedule is the sum of $171,653.87, plus attorneys' fees and court costs which Defendants are required to pay to AEL, under the Guaranty.

25.     AEL has suffered damages legally caused by Defendants' breach of the Guaranty in the manner set forth in Paragraph 24.

4

**REQUEST FOR RELIEF**

**WHEREFORE,** AEL FINANCIAL, LLC, an Illinois limited liability company, demands a money judgment against LARRY E. LIPPEL, an individual, and JOANNE LIPPEL, an individual, jointly and severally as follows:

1.    To recover all losses suffered by AEL, including actual, compensatory and consequential damages and lost profits in the amount to exceed the sum of $171,653.87;

2.    Additional damages, as provided by law;

3.    Attorneys' fees, costs and disbursements, as provided under the Guaranty and Maser Lease; and

4.    Such other and further relief as this Court may deem just and proper.


Dated: April 28, 2008                         Respectfully submitted,

                                              AEL FINANCIAL, LLC, an Illinois limited liability company


                                              By: /s/ John A. Benson, Jr._____
                                                     One of its Attorneys


Brian Ira Tanenbaum, Esq. (IL Bar No. 6181447)
John A. Benson, Jr., Esq. (IL Bar No. 6289042)
Attorneys for Plaintiff
The Law Offices of Brian Ira Tanenbaum, Ltd.
2970 Maria Avenue Suite 207
Northbrook, Illinois 60062
Telephone: 847-562-1636
Facsimile: 847-562-1637

EXHIBIT A



# MASTER LEASE AGREEMENT

Dated as of _____ June 21, 2006 _____

**LESSOR:** AEL Financial, LLC ("LESSOR")
**ADDRESS:** 600 North Buffalo Grove Road, Buffalo Grove, IL 60089

**LESSEE:** _____ Lippel Petroleum, Inc. _____ (herein called "LESSEE")

**ADDRESS:** _____ 626 Nesbit Street, Punta Gorda, FL 33950 _____

1. **LEASE.** LESSOR hereby leases and/or grants to LESSEE the right to use, and LESSEE hereby leases from and/or agrees to accept the right to use, subject to the terms and conditions herein set forth, the item(s) of personal property including but not limited to hardware and/or software and herein referred to as "Property" described in each Property Schedule entered into from time to time pursuant to this Master Lease Agreement. Each Property Schedule entered into by the parties shall constitute a separate non-cancellable lease agreement and shall incorporate therein all of the terms and conditions of this Master Lease Agreement and contain such additional terms and conditions as agreed upon. The term "LEASE" as used hereinafter shall refer to an individual Property Schedule which incorporates this Master Lease Agreement. Until a Property Schedule is signed by LESSOR, a Property Schedule signed by LESSEE constitutes an irrevocable offer by LESSEE to lease from LESSOR.

2. **TERM.** This Master Lease Agreement shall be effective when signed by both parties and shall continue in effect until all obligations of LESSEE under each Property Schedule are fully satisfied.

The Lease Term for each Property Schedule shall become effective on the first day of the month following the Installation Date ("Commencement Date") The Installation Date is the (i) date on which the Property is installed at the location set forth in the Property Schedule ("Property Location"); or (ii) if the Property is already installed, being used and leased from another party and is being purchased by LESSOR for lease to LESSEE hereunder, then the date on which LESSOR pays for the Property. LESSEE shall promptly sign and deliver to LESSOR a Certificate of Acceptance dated as of the Installation Date. UNLESS LESSEE, NOT MORE THAN TWO-HUNDRED TEN (210) DAYS OR LESS THAN ONE-HUNDRED EIGHTY (180) DAYS PRIOR TO THE INITIAL OR EXTENDED EXPIRATION OF THE LEASE, NOTIFIES LESSOR IN WRITING BY CERTIFIED MAIL OF ITS INTENTION NOT TO EXTEND THE LEASE, THE LEASE SHALL AUTOMATICALLY AND CONTINUOUSLY BE EXTENDED ON THE SAME TERMS AND CONDITIONS FOR A PERIOD OF TWELVE (12) MONTHS. In the event LESSEE notifies LESSOR of its intention not to extend the LEASE, then LESSEE must do one of the following: (A) Purchase all of the Property at a Mutually Agreeable Purchase Price; (B) Extend the LEASE for a period of twelve (12) months at the periodic rent identified on the Property Schedule; or (C) Enter into a new LEASE with LESSOR to lease property which replaces the Property on the Property Schedule and which has a cost that is greater than or equal to the original cost of the Property. LESSOR and LESSEE shall each have absolute discretion regarding their agreement or lack of agreement to the terms of options (A) and (C). If LESSOR and LESSEE have not reached agreeable terms to either option (A) or option (C) by the expiration of the Initial Lease Term, then option (B) shall prevail. At the end of the extension provided by option (B), the LEASE shall continue subject to termination at the end of any calendar month upon no less than 120 days written notice by either LESSOR or LESSEE.

3. **RENT.** LESSEE shall pay to LESSOR at its address set forth above, or at such other address LESSOR may hereinafter designate in writing, the rent specified for the Property, payable in advance, effective on the Commencement Date. Charges from the Installation Date to the Commencement Date shall be computed by converting the monthly or other calendar period rental to a daily rate based on a 30-day month. Subsequent monthly or other calendar period rental payments shall be due on the same day of subsequent months or other calendar periods as the Commencement Date of the LEASE.

4. **DISCLAIMER OF WARRANTIES.** (a) LESSEE ACKNOWLEDGES THAT LESSEE MADE THE SELECTION OF THE PROPERTY BASED ON ITS OWN JUDGMENT AND IS NOT RELYING ON LESSOR'S SKILL OR JUDGMENT TO SELECT OR FURNISH GOODS SUITABLE FOR ANY PARTICULAR PURPOSE. LESSEE ACKNOWLEDGES THAT LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTIES, EXPRESS OR IMPLIED, DIRECTLY OR INDIRECTLY INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND OF FITNESS, CAPACITY OR DURABILITY FOR ANY PARTICULAR PURPOSE, AND WARRANTIES AS TO THE DESIGN OR CONDITION OF THE PROPERTY AND THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE PROPERTY. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE OF ANY KIND OR NATURE WHATSOEVER, INCLUDING ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, TO ANY EXTENT WHATSOEVER, RELATING TO OR ARISING OUT OF THE SELECTION QUALITY, CONDITION, MERCHANTABILITY, SUITABILITY, FITNESS, OPERATION OR PERFORMANCE OF THE PROPERTY. NO DEFECT IN OR UNFITNESS OF THE PROPERTY SHALL RELIEVE LESSEE OF ITS OBLIGATIONS UNDER THE LEASE. LESSEE agrees that LESSOR assumes no liability for and makes no representation as to the treatment by LESSEE of the LEASE, the Property or the rent payments or other sums due thereunder for financial statement or tax purposes.

(b) For the term of the LEASE, or any extension thereof LESSOR hereby assigns to LESSEE and LESSEE may have the benefit of any and all Vendor's warranties, service agreements and patent indemnities, if any, with respect to the Property to the extent assignable by LESSOR, provided, however, that LESSEE'S sole remedy for the breach of any such warranty or indemnification shall be against the Vendor and not against LESSOR, nor shall any such breach have any effect whatsoever on the rights and obligations of either party with respect to the LEASE.

5. **STATUTORY FINANCE LEASE.** LESSEE agrees and acknowledges that it is the intent of both parties to the LEASE that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. LESSEE acknowledges and agrees the LESSEE has selected both (1) the Property; and (2) the Vendor from whom the Property is to be acquired. LESSEE acknowledges the LESSOR has not participated in any way in LESSEE'S selection of the Property or of the Vendor, and LESSOR has not selected, manufactured, or supplied the Property.

LESSEE IS ADVISED THAT IT MAY HAVE RIGHTS UNDER THE CONTRACT EVIDENCING THE ACQUISITION OF THE PROPERTY FROM THE VENDOR CHOSEN BY LESSEE AND THAT LESSEE SHOULD CONTACT THE VENDOR OF THE PROPERTY FOR A DESCRIPTION OF ANY SUCH RIGHTS.

6. **PROPERTY AND LIABILITY.** LESSOR, at the request of LESSEE, has ordered or shall order the Property described in each Property Schedule attached hereto from a Vendor selected by LESSEE. LESSOR shall not be liable for specific performance of the LEASE or for damages if, for any reason, the Vendor fails to accept such order or delays or fails to fill the order. LESSEE agrees to accept such Property and authorizes LESSOR to add the serial number of the Property to the Property Schedule.

7. **VENDOR NOT AN AGENT.** LESSEE understands and agrees that neither the Vendor, nor any salesman or other agent of the Vendor, is an agent of LESSOR, no salesman or agent of the Vendor is authorized to waive or alter any term or condition of the LEASE, and no representation as to Property or any other matter by the Vendor shall in any way affect LESSEE'S duty to pay the rent and perform its other obligations as set forth in the LEASE.

8. **PLACE OF USE.** LESSEE shall keep the Property at its place of business as specified in the LEASE, or at such other place as LESSOR may consent to in writing. LESSEE covenants and agrees not to allow the use of the Property by other than the employees of the LESSEE and covenants and agrees not to rent or sublet the Property or any part thereof AND WILL NOT WITHOUT LESSOR'S PRIOR WRITTEN CONSENT ASSIGN THE LEASE OR ITS INTEREST THEREUNDER.

Initial Here _LEL_

9. USE AND RETURN OF PROPERTY. The LESSEE leases and shall use the Property only for its intended purposes and shall exercise due and proper care in the use, repair and servicing of the Property and at all times and at its expense shall keep and maintain the Property in good working condition, order, and repair. The LESSEE shall make no alteration to the Property without the prior written consent of the LESSOR. LESSEE represents and warrants that the Property will be covered and maintained under the best standard full service maintenance agreement offered by the Vendor, provided the Vendor is either the original Property manufacturer/licensor or an authorized original Property manufacturer/licensor maintenance organization, or such other maintenance organization authorized by the original Property manufacture's/licensor ("Maintenance Provider"), during the full term of the LEASE or any extension thereof. Upon the expiration or termination of the LEASE, LESSEE at its sole expense shall forthwith have the Property de-installed and property prepared for shipment by the Maintenance Provider, insure, warrant eligibility for continued maintenance provider's best standard and most current version full service and maintenance agreement (or, with LESSOR'S written consent, in lieu of such warranty pay to LESSOR an inspection and refurbishment fee equal to ten percent (10%) of the original Property cost) and return the Property unencumbered to LESSOR, at such place designated by LESSOR, in the same condition as when received by LESSEE. LESSOR reserves the right to approve or designate the carrier and the means of shipment. However, if requested by LESSOR, LESSEE will prior to shipment, at its sole expense, store the Property after de-installation and packing on its premises for ninety (90) days. All replacement parts, additions and accessions incorporated in or affixed to the Property including but not limited to wiring, software and operating systems, at or after the commencement of the LEASE shall become the property of LESSOR. All related documentation, manuals and service logs are the property of LESSOR and are to be returned with the Property.

10. RISK OF LOSS AND DAMAGE. (a) LESSEE hereby assumes and shall bear the entire risk of loss for theft, loss, damage, destruction or governmental taking, and from any and every cause whatsoever to the Property, whether partial or complete, and whether or not through any default or neglect of LESSEE. Except as provided herein, no such event shall relieve LESSEE of its obligation to pay rent hereunder, nor shall any such event impair any other obligation of LESSEE under the LEASE which shall continue in full force and effect.

(b) If any Property is damaged, LESSEE must promptly notify LESSOR and within sixty (60) days of such damage shall, at its expense, cause such repairs to be made as are necessary to return the Property to its previous condition. LESSEE shall then be entitled to receive from LESSOR any insurance proceeds received in connection with such damage.

(c) In the event that any Property is destroyed, damaged beyond repair, lost, stolen or taken by governmental action for a period extending beyond the term of the LEASE or any extension thereof (an "Event of Loss"), LESSEE must promptly notify LESSOR and pay to LESSOR on the next rental payment date following the Event of Loss, an amount equal to the Stipulated Loss Value set forth in the applicable table (the form of which is attached to each Property Schedule as Exhibit A) of the Property, if applicable, or an amount equal to all unpaid and remaining rentals due for such Property during the term of the LEASE, plus an amount equal to the greater of (a) the fair market value of such Property prior to such loss, or (b) twenty (20) percent of the Property Cost, all discounted to present value at an annual rate of 6%. Upon payment of such amounts, LESSEE's obligation to pay further rent will cease with respect to such Property and LESSEE will be entitled to receive any insurance proceeds or other recovery received by LESSOR in connection with such Event of Loss.

(d) In the event of a governmental taking of the Property for an indefinite period which does not extend beyond the term of the LEASE, all obligations of the LESSEE with respect to such Property (including payment of rent) will continue. So long as LESSEE is not in default hereunder, LESSOR will pay to LESSEE all sums received by LESSOR by reason of such governmental taking up to the amount paid by LESSEE during such period.

11. INSURANCE. LESSEE, at its expense, shall insure the Property against all risks and shall maintain a loss payable endorsement in favor of LESSOR. The all risks insurance shall be in such amounts as LESSOR reasonably requires but in no event less than the full replacement value of the Property or if the Property is not repaired or replaced the Stipulated Loss Value as set forth in the applicable table (the form of which is attached to each Property Schedule as Exhibit A), if applicable, or an amount equal to all unpaid and remaining rentals due during the term of the LEASE plus an amount equal to twenty (20) percent of the original Property Cost all discounted to present value at an annual rate of 4%. LESSEE may act as a self-insurer in amounts acceptable to LESSOR only upon written consent of the LESSOR. LESSEE shall insure the LESSOR and LESSEE with respect to liability for personal injuries, death, damage to or loss of use of property resulting from the ownership, use and operation of the Property, in the amount of at least one million dollars combined single limit, or such greater amount as LESSOR shall reasonably require. All such insurance policies shall name both the LESSOR and LESSEE as insureds, and must provide that they may not be cancelled or altered without at least 30 days prior written notice to LESSOR. Such property insurance and liability insurance (and written evidence thereof delivered to LESSOR prior thereto) shall be satisfactory to LESSOR. If LESSEE fails to provide such evidence, then LESSOR shall have the right, but not the obligation to have either property insurance or liability insurance or both protecting the LESSOR placed at LESSEE'S expense. LESSEE'S expense may include the full premium paid by LESSOR (not reduced by any credit or refund due or paid to LESSOR) and any customary charges or fees of LESSOR and of its designee(s) associated with such insurance. LESSEE shall pay such amounts in equal installments allocated to each rent payment plus interest on such amounts at the lesser of the highest rate permitted by law or 1.5% per month.

12. TAXES. (a) General. LESSEE assumes liability for and shall indemnify and defend LESSOR against, all fees, taxes, and charges of any nature imposed by any governmental authorities upon or relating to the Property. (b) Filing. If at any time such taxes, fees, or charges are imposed, LESSOR (or its agents) shall make and file any of all declarations and returns in connection with such taxes in order to pay the same (unless LESSOR otherwise directs that LESSEE shall make and file all declarations and returns in connection with such taxes and send LESSOR evidence of timely payment) (c) Rental, Sales, and/or Use Taxes. LESSOR shall directly remit all rental, sales and/or use taxes to the appropriate taxing unit and LESSEE shall remit to LESSOR, upon demand, any and all such taxes as LESSOR shall require. (d) Personal Property Taxes. For Property subject to personal property taxes, to liquidate such taxes LESSEE agrees to pay LESSOR an annual liquidated amount ("Assessed Amount") which shall be based upon the Property price (as set forth in the original Vendor Invoice), reduced by depreciation calculated in accordance with applicable depreciation schedules used by the applicable taxing jurisdiction at the applicable tax rate. The Assessed Amount shall be payable by LESSEE without regard to any discounts or reduction LESSOR may obtain by reason of early payment or otherwise. In addition, LESSEE shall pay LESSOR an annual Tax Administration fee equal to ten percent (10%) of the Assessed Amount charges for each Property Schedule. If any personal property taxes are imposed upon Property subject of that Property Schedule. (e) Audits and Exemption Certificates. LESSEE will be responsible for any audit adjustment if a tax exemption certificate furnished by LESSEE is not accepted by the applicable taxing authority. LESSEE will otherwise indemnify LESSOR for taxes, interest, penalties and other sums charged as a result of audit adjustments occurring for any reason with respect to the LEASE or Property (including if a certificate is denied). LESSOR reserves the right to invoice and collect an estimated amount for personal property taxes each year, such estimate to be based on the most recent ascertainable assessment. Upon receipt of an invoice for the actual amount due, LESSOR will invoice LESSEE and LESSEE will pay to LESSOR or LESSOR will rebate to LESSEE any difference between the actual invoice and the estimated amount.

13. ADDITIONAL SECURITY. In any jurisdiction where the Uniform Commercial Code is in effect, LESSEE grants to LESSOR a security interest in any and all goods, chattels, fixtures, furniture, equipment, assets, accounts receivable, contract rights, general intangibles, and property of every kind wherever located now and/or hereafter belonging to LESSEE and in which LESSEE has any interest and proceeds thereof, and agrees that any security interest created by this agreement secures any and all obligations of LESSEE and those of any affiliate of LESSEE to LESSOR whether hereunder or otherwise and whether now in existence and/or to come into existence and whether initially owing to LESSOR or acquired by LESSOR through one or more assignments.

14. TITLE. All Property shall remain personal property and the title thereto shall remain in the LESSOR exclusively unless the Property is, or includes software in which event and only to the extent required by the applicable license, title to said software shall remain in the Licensor. To the extent that the License allows title to software to pass to the Licensee, such title shall vest and remain in LESSOR. To the extent that such vesting requires a specific written conveyance, LESSEE hereby conveys to LESSOR any title it has or may hereafter acquire in the software and relinquishes any subsequent claim or title in the software, including any rights to purchase the software and/or retain rights to use the same beyond the Lease Term. If any provision of this paragraph requires for its effectiveness Licensor's prior written consent because the License limits transfers, encumbrance, or assignment of the software, then LESSEE shall assist LESSOR, if so requested, in obtaining such consent. LESSEE shall keep the LESSOR'S title rights in the Property free from any and all liens, claims, and legal processes. LESSEE shall give LESSOR immediate notice of any attachment or other judicial process, liens, or claims affecting the Property and shall indemnify and save LESSOR harmless from any loss or damage caused thereby. To further secure payment to LESSOR, LESSEE agrees that each LEASE is cross-collateralized with all others and in the event of default by LESSEE of any LEASE, LESSOR may exercise its rights and remedies as if LESSEE defaulted on all LEASES.

In the event the Maintenance Provider deems it necessary to replace any Property with like property, LESSEE shall immediately notify LESSOR of the same. However, no exchange or replacement shall occur without LESSOR'S prior written approval and consent. LESSEE further agrees (a) to take all necessary and reasonable steps to insure title to the replacement Property is, subject to LESSOR'S satisfaction, transferred to the LESSOR, (b) to insure the replacement Property as provided in Paragraph 11, and (c) to pay any and all costs in connection with or related to such Property exchange.

Initial Here

15 FILING. LESSEE on behalf of LESSEE and LESSOR, hereby authorizes LESSOR and appoints LESSOR its attorney-in-fact to execute and file the LEASE, any financing statements or security agreements with respect to the Property or any collateral provided by LESSEE to LESSOR prior to or following -LESSOR'S acceptance of the LEASE, in any state of the United States. LESSEE shall execute such supplemental instruments and financing statements if LESSOR deems much to be necessary or advisable and shall otherwise cooperate to defend the title of the LESSOR by filing or otherwise.

16 RIGHT OF INSPECTION. The LESSOR, its agents, dealers, and representatives shall have the right at any time during usual business hours to inspect the Property and for this purpose to have access to the location of the Property.

17 NON-WAIVER. LESSOR'S failure at any time to require strict performance by LESSEE of any of the provisions of the LEASE shall not waive or diminish LESSOR'S right thereafter to demand strict compliance therewith or with any other provision. Waiver of any default shall not waive any other default. LESSOR rights under the LEASE are cumulative and not alternative.

18 DEFAULT. Time is of the essence of the LEASE, and no waiver by LESSOR of any breach or default shall constitute a waiver of any other breach or default by LESSEE or waiver of any of LESSOR'S rights. If LESSEE fails to pay any rent or other amounts required within ten (10) days after the same is due and payable, or if LESSEE fails to observe, keep or perform any other provision of the LEASE required to be observed, kept or performed by LESSEE, or if LESSEE ceases doing business as a going concern, or if a petition is filed by or against LESSEE under the Bankruptcy Act or any amendment thereto (including a petition for re-organization of an arrangement), or if a receiver is appointed for LESSEE or its property, or if LESSEE commits an act of bankruptcy, becomes insolvent, makes an assignment for the benefit of creditors, offers a composition or extension of any of its indebtedness, or if LESSEE without LESSOR'S prior written consent, attempts to remove or sell or transfer or encumber or sublet or part with the possession of the Property, or if LESSOR deems itself insecure as a result of a material adverse change in the financial or operating condition of LESSEE or a major change in the ownership or control of LESSEE or otherwise, LESSOR or its agents shall have the right exercise any one or more of the following remedies (a) to declare the entire amount of rent hereunder immediately due and payable without notice or demand to LESSEE, (b) to sue for and recover from the LESSEE the amount stated in the Stipulated Loss Value as set forth in the applicable table (the form of which is attach to the Property Schedule as Exhibit A), if any, or an amount equal to the unpaid balance of the rent due and to become due during the term of the LEASE plus amount equal to the greater of (i) the fair market value of the Property prior to the event of default, or (ii) twenty (20) percent of the Property Cost, all discounted to present value at an annual rate of 4%, (c) to take possession of any Property without demand or notice wherever same may be located without any court order or other process of law. Upon retaking possession of any Property, the LESSOR at its option may (i) lease repossessed Property or any part thereof to any third party on such terms and conditions as the LESSOR may determine or (ii) sell the Property or any part thereof to the highest bidder at public auction or at a private sale, and will credit the net amount so realized less expenses incurred in connection with such disposition to the amount due pursuant to (b) above. LESSEE hereby waives any and all damages occasioned by such taking of possession. Any said taking of possession shall not constitute termination of the LEASE and shall not relieve LESSEE of its original obligations unless LESSOR expressly so notifies LESSEE in writing.

To the extent permitted by applicable law, the LESSEE waives any and all rights and remedies conferred upon a LESSEE by UCC Sections 2A-508 through 2A 522, including (without limitation) the LESSEE'S rights to (a) cancel or repudiate the LEASE, (b) reject or revoke acceptance of the leased Property, (c) recover damages from the LESSOR for breach of warranty or for any other reason, (d) claim a security interest in any rejected Property in the LESSEE'S possession or control, (e) deduct from rental payments all or any part of any claimed damages resulting from the LESSOR'S default under the LEASE, (f) accept partial delivery of the leased Property, (g) "cover" by making any purchase or lease of other Property in substitution for Property due from the LESSOR, (h) recover from the LESSOR; any general, special, incidental or consequential damages, for any reason whatsoever, and (i) specific performance, replevin or the like for any of the leased Property.

To the extent permitted by applicable law, the LESSEE waives any rights now or hereafter conferred by statute or otherwise that may require the LESSOR to sell, re-lease or otherwise use or dispose of any of the leased Property in mitigation of the LESSOR'S damages as set forth in the LEASE or that may otherwise limit or modify any of LESSOR'S rights or remedies under the LEASE. The remedies provided for in the LEASE shall not be deemed exclusive but shall be cumulative, and shall be in addition to all other remedies existing at law or in equity.

Should any legal proceedings be instituted by LESSOR to recover any monies due or to become due under the LEASE and/or for the possession of the Property, LESSEE shall pay LESSOR'S reasonable attorney's fees, court costs, and other related expenses as well as fees and costs incurred in connection with a bankruptcy proceeding including, but not limited to, any objections or disputes. The LESSEE and all endorsers and guarantors hereby consent to the LESSOR granting, at its own option, one or more extensions of the time of payment or performance of any of the obligations of the LESSEE or of any security agreement securing the LEASE, hereby waiving all notice thereof.

19 ASSIGNMENT. NEITHER THE LEASE NOR THE RIGHTS THEREUNDER SHALL BE ASSIGNED, NOR SHALL ANY OF THE PROPERTY BE SUBLEASED BY LESSEE WITHOUT PRIOR WRITTEN CONSENT OF LESSOR. LESSOR, WITHOUT NOTICE TO LESSEE, MAY AT ANY TIME ASSIGN ALL OR PART OF ITS RIGHT, TITLE AND INTEREST IN AND TO THE LEASE IN ANDTO EACH ITEM OF PROPERTY AND MONIES TO BECOME DUE TO THE LESSOR THEREUNDER; and, LESSOR may grant security interest in the Property, subject to the LESSEE'S rights therein as set forth in the LEASE. Any assignee of LESSOR shall have all of the rights, but none of the obligations, of LESSOR under the LEASE and LESSEE agrees that it will not assert against any assignee of LESSOR any defense, counterclaim or offset that LESSEE may have against LESSOR. LESSEE acknowledges that any assignment or transfer by LESSOR would neither materially change LESSEE'S duties or obligations under the LEASE nor materially increase the burdens or risks imposed on LESSEE.

20 POSSESSION AND QUIET ENJOYMENT. LESSOR covenants to and with LESSEE that, provided LESSEE performs the conditions of the LEASE and so long as LESSEE shall not be in default thereunder, LESSEE shall peaceably and quietly hold and use the Property during the LEASE term without hindrance or interruption by LESSOR.

21 LIABILITY AND INDEMNITY. Except for the gross negligence or wilful misconduct of LESSOR, LESSEE agrees to indemnify LESSOR against and hold LESSOR harmless from any and all claims, (INCLUDING WITHOUT LIMITATION CLAIMS INVOLVING STRICT OR ABSOLUTE LIABILITY), actions, suits, proceedings, costs, expenses, damages and liabilities at law or in equity, including costs and reasonable attorney's fees, arising out of, connected with or resulting from the LEASE or the Property, including, without limitation the manufacture, selection, purchase, ownership, delivery, possession, use, operation, condition, sales, return, storage or disposition thereof, any latent or other defects, whether or not discoverable, and any claim for patent, trademark or trade name infringement.

LESSOR shall not be liable to LESSEE for any loss, damage, injury, or expense of any kind or nature, caused directly or indirectly by any Property or the use or maintenance thereof, the repair, servicing or adjustment thereto, or for any delay or failure to provide any thereof, any interruption of service or loss of use of the Property, or for any loss of business or damage whatsoever and howsoever caused.

For purposes of this Paragraph, the term "LESSOR" shall include LESSOR, its successors and assigns, shareholders, directors, officers, representatives, employees, and agents, and the provisions of this Paragraph shall survive expiration of the LEASE with respect to events occurring prior thereto.

22 NET LEASE. The LEASE is a net lease and LESSEE agrees that its obligation to pay all rent and other sums payable thereunder are absolute and unconditional and shall not be subject to any abatement, reduction, setoff, defense, counterclaim or recoupment for any reason whatsoever.

23 REPRESENTATIONS AND WARRANTIES OF LESSEE. LESSEE hereby represents, warrants and covenants that, with respect to the LEASE, any amendment, addendum, rider, or other attachment executed thereunder.

(a) The execution, delivery and performance thereof by LESSEE has been duly authorized by all necessary corporate or business action.

(b) The individual executing such was duly authorized to do so.

(c) They constitute legal, valid and binding agreements of LESSEE enforceable in accordance with their respective terms.

(d) Any and all financial statements or other information with respect to the LESSEE supplied to LESSOR at the time of execution hereof and any amendments, addendums, or riders hereto are true and complete.

The foregoing representations and warranties shall survive the signing and delivery of the LEASE and any amendments, addendums, riders or other attachments thereto.

Initial Here _____

24. MISCELLANEOUS. (a) All notices relating hereto shall be in writing and mailed to LESSOR or LESSEE by certified mail, return receipt requested at its respective address above shown or at any later address last known to the sender. The LEASE is irrevocable for the full term thereof and for the aggregate rental therein reserved, and the rent shall not abate by reason of termination of LESSEE'S right of possession and/or the taking of possession by LESSOR or for any other reason. If more than one LESSEE is named in the LEASE, the liability of each shall be joint and several.

(b) Delinquent installments of rent, or other amounts due under the LEASE, of more than ten (10) days shall be subject to a penalty equal to ten (10) percent of such payment, plus interest at the rate of one and one-half percent per month, but in no event greater than the highest lawful rate. If LESSOR supplies LESSEE with labels stating that Property is owned by LESSOR, LESSEE shall label the Property and shall keep the same affixed in a prominent place.

(c) LESSEE agrees to furnish to LESSOR upon request:
(1) Such additional information as LESSOR may reasonably request concerning LESSEE and LESSEE'S use of the Property in order to enable LESSOR to determine whether the covenants, terms, and provisions of the LEASE have been complied with by LESSEE
(2) Copies of annual or quarterly financial statements including a copy of the balance sheet and profit and loss statement of LESSEE
(3) Financial statements of any corporation that owns a controlling interest in LESSEE
(4) Copies of all Maintenance Provider's reports covering the Property
(5) A duly executed written warranty verifying the serial number(s) of the Property and any attachments or appurtenances thereto, specifying the shipment date for the return of the Property, its general condition, that the Property has been and continues to be in use for its intended purpose and within the limitations set forth and at the location specified in the LEASE and that insurance is in full force and effect.

(d) LESSEE shall furnish to LESSOR such information and data as LESSOR may from time to time reasonably request as to existence of and status of any claims for damages (whether against the Property or against LESSOR or LESSEE) arising out of the use, operation, or condition of the Property, the taxes of the nature provided to be paid by LESSEE under the provisions of Paragraph 12 which have been assessed and the amount of such taxes paid, and such other data pertinent to the Property and the condition, use, and operation thereof as LESSOR may from time to time reasonably request.

(e) If LESSEE shall fail to comply with its covenants and obligations under the LEASE, the payment of taxes, assessments, and other charges of keeping the Property in repair and free of liens, charges, and encumbrances, LESSOR may, after reasonable notice to LESSEE of LESSOR'S intent, pay such charges, taxes, assessments or cause compliance with such covenants; however, LESSOR shall not be obligated to make advances to perform the same, and all sums so advanced shall be payable to LESSOR upon demand as additional rent. No such advance shall be deemed to relieve LESSEE from any default under the LEASE or be considered a waiver by LESSOR of any of its rights or remedies.

(f) In the event a major change in the ownership or financial condition of LESSEE occurs prior to delivery and acceptance of any Property, and LESSOR, in its sole discretion deems itself insecure as a result of such change, LESSOR reserves the right to cancel the LEASE and LESSEE hereby agrees to hold LESSOR harmless and to indemnify LESSOR from any and all obligations, liabilities, costs and expenses incurred as a result of such cancellation, including but not limited to LESSOR'S issuance of its purchase order to the Property Vendor.

(g) The LEASE, any amendments, addendums, riders, or other attachments made thereto shall be deemed to have been made and executed in Lake County, Illinois, regardless of the order in which the signatures of the parties shall be affixed thereto, and shall be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the State of Illinois. All claims and other matters relating to the LEASE, any amendments, addendums, riders, or other attachments made thereto and the Property SHALL BE HEARD IN ANY STATE OR FEDERAL COURT LOCATED IN LAKE COUNTY, ILLINOIS, AND THE PARTIES CONSENT TO THE EXCLUSIVE PERSONAL JURISDICTION OF SUCH COURTS, AND WAIVE TRIAL BY JURY.

(h) LESSEE agrees to pay LESSOR on demand one hundred ($100) dollars for LESSOR'S cost of processing, documentation, filing and search fees, credit reports and other related administrative and processing expenses for each LEASE.

(i) Notwithstanding anything to the contrary contained in the LEASE, including but not limited to Paragraph 18, in addition to all other remedies provided therein, in the event LESSEE fails to ship the Property to the destination designated by LESSOR on or before the warranted date as specified in Paragraph 24 (c) (5), LESSEE agrees to pay to LESSOR upon demand an amount equal to the daily rate, based on a 30 day month, of the monthly or other calendar period rental for each day after such date until such time as the Property leaves the LESSEE'S location.

(j) LESSEE and any guarantor agree that any process served for any action or proceeding shall be valid if mailed by certified mail, return receipt requested, with delivery directed to the LESSEE, its registered agent, or any agent appointed in writing to accept such process.

(k) AT LESSOR'S SOLE ELECTION, LESSOR MAY SUBMIT ANY MATTER ARISING OUT OF THIS TRANSACTION, INCLUDING ANY CLAIM, COUNTERCLAIM, SETOFF, OR DEFENSE, TO BINDING ARBITRATION BY THE AMERICAN ARBITRATION ASSOCIATION IN LAKE COUNTY, ILLINOIS OR ANY OTHER SITE OF LESSOR'S CHOICE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE FINAL AND BINDING AND MAY BE ENTERED AS RENDERED IN ANY COURT HAVING JURISDICTION THEREOF.

25. SEVERABILITY. If any provisions of the LEASE or any remedy thereunder provided for is deemed invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions thereof including remaining default remedies, shall be given effect in accordance with the manifest intent thereof.

26. CONFLICTS. If any of the provisions of the LEASE conflict with any provisions of any other documentation relating to the transaction, the terms of the LEASE shall prevail and control, unless otherwise agreed to in writing by LESSOR.

27. ENTIRE AGREEMENT, WAIVER. This instrument constitutes the entire agreement between the parties. No waiver by LESSOR of any provision hereof shall constitute a waiver of any other matter. This Master Lease Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Master Lease Agreement including any amendments, additions, riders or other attachments is not valid and binding until execution thereof by an authorized officer of LESSOR in Buffalo Grove, Illinois.

IN WITNESS WHEREOF, LESSOR and LESSEE have signed this Master Lease Agreement as of the date set forth above.

LESSEE'S INITIALS √ _L&L_

LESSOR AEL Financial, LLC
By _____
JAMES G. CONDES CONTROLLER
(Print or Type Name)
Title _____

LESSEE Lippel Petroleum, Inc
By _____
Larry E. Lippel
(Print or Type Name)
Title    President

Page 4 of 4

## CERTIFICATE OF INCUMBENCY

The undersigned being duly elected and acting as Secretary of Lippel Petroleum, Inc.("Lessee") does hereby certify that the person listed below is a duly authorized officer of Lessee in the capacity set forth opposite his/her name and that his/her signature is true and correct and that such person had, has and will continue to have the proper corporate power and authority to execute and deliver the Master Lease Agreement dated as of June 21, 2006 between Lessee and AEL Financial, LLC any Property Schedules pursuant thereto and the documents required thereunder and furthermore such person may designate and authorize any other person(s) to execute and deliver any documents related to such Master Lease Agreement. This Certificate and related authority shall apply to all agreements, documents, and instruments executed by the person listed below or his/her designee without regard to the date thereof and shall remain in effect until such time as AEL Financial, LLC shall have received by certified mail notice to the contrary and then only with respect to transactions entered into after receipt of such notice.

| NAME | TITLE | SAMPLE SIGNATURE |
|------|-------|------------------|
| Larry E. Lippel | President | *Larry E. Lippel* |

I hereby attest that this information is true and correct and in accordance with Lessee's rules, regulations, by laws or other similar applicable documents.

By: *JoAnne Lippel*

Name: *JoAnne Lippel*

Title: Secretary

Dated as of: June 21, 2006

(SEAL)

EXHIBIT B

PROPERTY SCHEDULE NO. 1
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR,
AND
Lippel Petroleum, Inc., AS LESSEE

This Property Schedule is entered into in accordance with the Master Lease Agreement identified above. All the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Property Schedule. In the event of a conflict between the terms of the Master Lease Agreement and this Property Schedule, the terms of this Property Schedule shall prevail.

VENDOR(s):     Pro Industries, Inc.

PROPERTY DESCRIPTION:  1ea. Skid Tank 3000 Gallon Double Wall Primed Only, 3ea. Skid Tank 6000 Gallon Double Wall Primed Only, 4ea. 6" Threaded Opening, 1ea. Freight Charges
The Property shall also include any periodic updates, revisions, upgrades and enhancements thereto.

PROPERTY LOCATION:  LESSEE agrees that Property only be located and used at 525 Nesbit Street, Punta Gorda, FL. 33950 and at no other location unless authorized in writing by LESSOR for the full term hereof and any extensions thereof.

| | |
|---|---|
| INITIAL LEASE TERM | 60 months |
| MONTHLY EQUIVALENT RENT | $1,124.84 |
| RENTAL PAYMENT: | Billed monthly, plus applicable taxes, payable in advance |
| ADVANCE RENTALS: | Lessee agrees to an initial payment in the amount of $2,249.68 which is in payment of the first and last initial term monthly equivalent rent |

ADDITIONAL PROVISIONS
LESSEE warrants that LESSOR will have full unrestricted right to sell all Property returned under the LEASE

Upon an event of default by LESSEE, LESSOR has the right to cause the Licensor of any software under the LEASE to both terminate its License with LESSEE and to cease providing maintenance and support services to LESSEE. LESSEE agrees to hold LESSOR harmless from any claims LESSEE may have as a result of said License termination and termination of maintenance and support services.

In the event a maintenance agreement is covered under the LEASE, LESSEE acknowledges that LESSOR shall have no obligation for the performance of such maintenance and LESSEE furthermore shall hold LESSOR harmless from any claims relating to such maintenance agreement.

All Property description items shall be deemed to be personal property for all purposes under the LEASE.

LESSEE hereby further represents, confirms, and warrants that in the event Licensor/Vendor fails to provide support, service or maintenance or LESSEE is dissatisfied with the support, service or maintenance performed by Licensor/Vendor, LESSEE recognizes that such events shall not affect LESSEE'S payment and other obligations under the LEASE. LESSEE agrees that it will not seek any relief from LESSOR as a result of the failure of Licensor/Vendor to perform such support, service or maintenance.

COMMENCEMENT DATE
The Commencement Date shall be the first day of the month following the Installation Date (as defined herein). Charges from the Installation Date to the Commencement Date shall be computed by converting the monthly or other calendar period rental to a daily rate based on a 30-day month. LESSOR assumes no responsibility for costs associated with returning non-acceptable Equipment, and LESSEE agrees to pay, on demand, any and all such costs.

If the Installation Date for this Property Schedule occurs on or after July 5, 2006 and if, on said Installation Date there is a greater than twenty five (25) basis point difference between the yield of United States Treasury Obligations for a comparable term of the LEASE as published in the Wall Street Journal and this Property Schedule's assigned base rate, LESSOR may adjust the monthly equivalent rent by applying an adjusted monthly lease rate factor to the Property cost. Therefore, in the event of such an adjustment, this Property Schedule's base monthly lease rate factor of 0225 shall be adjusted by .033 percent for each twenty-five (25) basis point difference between the aforementioned Treasury Obligation rate and this Property Schedule's assigned base rate. Pro-rata adjustments will be made for fractional changes thereof. This Property Schedule's assigned base rate is 4.1 percent.

IN WITNESS WHEREOF, LESSOR and LESSEE have caused this Property Schedule to be signed by their respective duly authorized representatives.

| LESSOR | LESSEE |
|---|---|
| AEL Financial, LLC | Lippel Petroleum, Inc. |
| By _James G. Condes_ | By _Larry E. Lippel_ |
| Name  JAMES G. CONDES CONTROLLER | Name  Larry E. Lippel |
| Title _____ | Title _____ President _____ |
| Date  7/10/06 | Date  6-21-06 |

## CERTIFICATE OF ACCEPTANCE

TO:        **AEL FINANCIAL, LLC**
               600 North Buffalo Grove Road
               Buffalo Grove, IL 60089

Re:     Property Schedule No. 1 to Master Lease Agreement dated as of June 21, 2006 between **AEL Financial, LLC** as
        ("LESSOR") and Lippel Petroleum, Inc., as ("LESSEE")

**VENDOR(s):** Pro Industries, Inc.

PROPERTY DESCRIPTION:

1ea. Skid Tank 3000 Gallon Double Wall Primed Only, 3ea. Skid Tank 6000 Gallon Double Wall Primed Only, 4ea. 6"
Threaded Opening, 1ea. Freight Charges

**LOCATION: 525 Nesbit Street, Punta Gorda, FL 33950**

We, the LESSEE, certify that the Property described above was delivered to and installed at the Property location in good
order and condition and acceptable to us, is ready for its intended use as of the date hereof, and is acceptable for
maintenance by the maintenance provider, and the quantity, description and serial numbers are correct. The decals, labels,
etc., if required and supplied, have been affixed to the above items. We approve payment by you, the LESSOR, to the
Vendor for the Property as well as all services described above. We further certify that you have fully and satisfactorily
performed all covenants and conditions to be performed by you under the Lease, and shall hold you harmless for any
failure on the part of the Vendor to perform to our satisfaction.

This will advise that we are aware of our obligations hereunder and that we agree to enforce in our own name all
warranties, agreements, or representations, if any, which may be made by the Vendor to us. LESSEE certifies that the
above referenced Property was placed in service on √ ____6-21-06____, 2006 and agrees that said date shall be
deemed to be the Installation Date under the Lease.

Very truly yours,

Lippel Petroleum, Inc.

By: √ _____

Name: _____Larry E. Lippel_____

Title: _____President_____

ADDENDUM "A"
TO
PROPERTY SCHEDULE NO. 1
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR
AND
Lippel Petroleum, Inc., AS LESSEE

LESSOR and LESSEE hereby agree to modify Property Schedule No. 1 only as follows:

Upon expiration of the initial lease term, and assuming that no default has occurred and is continuing, LESSEE may purchase LESSOR'S interest in the Lease Property on an as is where is basis with no warranties expressed or implied for a sum equal to one dollar ($1.00), plus all applicable taxes. LESSEE must tender payment within ten (10) days subsequent to the end of the initial lease term.

All other terms and conditions of Property Schedule No. 1 remain intact and unchanged.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "A" as of √ 6-21-06 , 2006.

Lessor: AEL Financial, LLC

By: _____

Name: JAMES G. CONDES CONTROLLER

Title: _____

Lessee: Lippel Petroleum, Inc.

By: √ _____

Name: Larry E. Lippel

Title: President

EXHIBIT C

PROPERTY SCHEDULE NO. 2
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR,
AND
Lippel Petroleum, Inc., AS LESSEE

This Property Schedule is entered into in accordance with the Master Lease Agreement identified above. All the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Property Schedule. In the event of a conflict between the terms of the Master Lease Agreement and this Property Schedule, the terms of this Property Schedule shall prevail.

VENDOR(s):     Hale Trailer Brake & Wheel, Inc.

PROPERTY DESCRIPTION: 1ea  1993 Fruehauf Petro Tank TRL, Unit No. 917430FRUEHAUF (s/n 1H4T04427PLO13304)
The Property shall also include any periodic updates, revisions, upgrades and enhancements thereto.

PROPERTY LOCATION   LESSEE agrees that Property only be located and used at 525 Nesbit Street, Punta Gorda, FL 33950 and at no other location unless authorized in writing by LESSOR for the full term hereof and any extensions thereof.

| | |
|---|---|
| INITIAL LEASE TERM | 60 months |
| MONTHLY EQUIVALENT RENT | $720.56 |
| RENTAL PAYMENT: | Billed monthly, plus applicable taxes, payable in advance |
| ADVANCE RENTALS: | Lessee agrees to an initial payment in the amount of $1,441.12 which is in payment of the first and last initial term monthly equivalent rent. |

ADDITIONAL PROVISIONS:
LESSEE warrants that LESSOR will have full unrestricted right to sell all Property returned under the LEASE.

Upon an event of default by LESSEE, LESSOR has the right to cause the Licensor of any software under the LEASE to both terminate its License with LESSEE and to cease providing maintenance and support services to LESSEE   LESSEE agrees to hold LESSOR harmless from any claims LESSEE may have as a result of said License termination and termination of maintenance and support services.

In the event a maintenance agreement is covered under the LEASE, LESSEE acknowledges that LESSOR shall have no obligation for the performance of such maintenance and LESSEE furthermore shall hold LESSOR harmless from any claims relating to such maintenance agreement.

All Property description items shall be deemed to be personal property for all purposes under the LEASE.

LESSEE hereby further represents, confirms, and warrants that in the event Licensor/Vendor fails to provide support, service or maintenance or LESSEE is dissatisfied with the support, service or maintenance performed by Licensor/Vendor, LESSEE recognizes that such events shall not affect LESSEE'S payment and other obligations under the LEASE   LESSEE agrees that it will not seek any relief from LESSOR as a result of the failure of Licensor/Vendor to perform such support, service or maintenance

COMMENCEMENT DATE
The Commencement Date shall be the first day of the month following the Installation Date (as defined herein).  Charges from the Installation Date to the Commencement Date shall be computed by converting the monthly or other calendar period rental to a daily rate based on a 30-day month   LESSOR assumes no responsibility for costs associated with returning non-acceptable Equipment, and LESSEE agrees to pay, on demand, any and all such costs.

If the Installation Date for this Property Schedule occurs on or after July 5, 2006 and if, on said installation Date there is a greater than twenty five (25) basis point difference between the yield of United States Treasury Obligations for a comparable term of the LEASE as published in the Wall Street Journal and this Property Schedule's assigned base rate, LESSOR may adjust the monthly equivalent rent by applying an adjusted monthly lease rate factor to the Property cost. Therefore, in the event of such an adjustment, this Property Schedule's base monthly lease rate factor of .0225 shall be adjusted by .033 percent for each twenty-five (25) basis point difference between the aforementioned Treasury Obligation rate and this Property Schedule's assigned base rate.  Pro-rata adjustments will be made for fractional changes thereof   This Property Schedule's assigned base rate is 4.1 percent.

IN WITNESS WHEREOF, LESSOR and LESSEE have caused this Property Schedule to be signed be their respective duly authorized representatives

| LESSOR: | LESSEE: |
|---|---|
| AEL Financial, LLC | Lippel Petroleum, Inc. |
| By: _(signature)_ | By: _(signature)_ |
| Name   JAMES G. CONDES CONTROLLER | Name   Larry E. Lippel |
| Title | Title           President |
| Date   7/26/06 | Date   6-21-06 |

ADDENDUM "A"
TO
PROPERTY SCHEDULE NO. 2
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR
AND
Lippel Petroleum, Inc., AS LESSEE

LESSOR and LESSEE hereby agree to modify Property Schedule No. 2 only as follows:

Upon expiration of the initial lease term, and assuming that no default has occurred and is continuing, LESSEE may purchase LESSOR'S interest in the Lease Property on an as is where is basis with no warranties expressed or implied for a sum equal to one dollar ($1.00), plus all applicable taxes. LESSEE must tender payment within ten (10) days subsequent to the end of the initial lease term.

All other terms and conditions of Property Schedule No. 2 remain intact and unchanged.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "A" as of ✓ 06-21-2006 , 2006.

Lessor: AEL Financial, LLC

By: _____

Name: JAMES G. CONDES CONTROLLER

Title: _____

Lessee: Lippel Petroleum, Inc.

By: ✓ _____

Name: Larry E. Lippel _____

Title: President _____

## CERTIFICATE OF ACCEPTANCE

TO:     **AEL FINANCIAL, LLC**
        600 North Buffalo Grove Road
        Buffalo Grove, IL 60089

Re:     Property Schedule No. 2 to Master Lease Agreement dated as of June 21, 2006 between AEL Financial, LLC as
        ("LESSOR") and Lippel Petroleum, Inc., as ("LESSEE")

**VENDOR(s):** Pro Industries, Inc.

PROPERTY DESCRIPTION:

1ea. Fruehauf Petro Tank TRL, Unit No: 917430FRUEHAUF (s/n 1H4T04427PLOI3304)

LOCATION: 525 Nesbit Street, Punta Gorda, FL 33950

We, the LESSEE, certify that the Property described above was delivered to and installed at the Property location in good
order and condition and acceptable to us, is ready for its intended use as of the date hereof, and is acceptable for
maintenance by the maintenance provider, and the quantity, description and serial numbers are correct. The decals, labels,
etc., if required and supplied, have been affixed to the above items. We approve payment by you, the LESSOR, to the
Vendor for the Property as well as all services described above. We further certify that you have fully and satisfactorily
performed all covenants and conditions to be performed by you under the Lease, and shall hold you harmless for any
failure on the part of the Vendor to perform to our satisfaction.

This will advise that we are aware of our obligations hereunder and that we agree to enforce in our own name all
warranties, agreements, or representations, if any, which may be made by the Vendor to us. LESSEE certifies that the
above referenced Property was placed in service on √ _07/17/06_ , 2006 and agrees that said date shall be
deemed to be the Installation Date under the Lease.

Very truly yours,

REB OU Inc. a/k/a REB of Florida, Inc.

By: _Larry E. Lippel_

Name: _Larry E. Lippel_

Title: _President_

EXHIBIT D

PROPERTY SCHEDULE NO. 3
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR,
AND
Lippel Petroleum, Inc., AS LESSEE

This Property Schedule is entered into in accordance with the Master Lease Agreement identified above. All the terms and conditions of the Master Lease Agreement are hereby incorporated herein and made a part hereof as if such terms and conditions were set forth in this Property Schedule. In the event of a conflict between the terms of the Master Lease Agreement and this Property Schedule, the terms of this Property Schedule shall prevail.

VENDOR(s):    Softrim Data Solutions and DM Software, Inc.

PROPERTY DESCRIPTION: As per Exhibit "A"-two pages attached hereto and made a part hereof.
The Property shall also include any periodic updates, revisions, upgrades and enhancements thereto.

PROPERTY LOCATION: LESSEE agrees that Property only to be located and used at 525 Nesbit Street, Punta Gorda, FL 33950 and at no other location unless authorized in writing by LESSOR for the full term hereof and any extensions thereof.

| | |
|---|---|
| INITIAL LEASE TERM | 60 months |
| MONTHLY EQUIVALENT RENT | $1,840.35 |
| RENTAL PAYMENT: | Billed monthly, plus applicable taxes, payable in advance |
| ADVANCE RENTALS | Lessee agrees to an initial payment in the amount of $3,680.70 which is in payment of the first and last initial term monthly equivalent rent |

ADDITIONAL PROVISIONS
LESSEE warrants that LESSOR will have full unrestricted right to sell all Property returned under the LEASE.

Upon an event of default by LESSEE, LESSOR has the right to cause the Licensor of any software under the LEASE to both terminate its license with LESSEE and to cease providing maintenance and support services to LESSEE. LESSEE agrees to hold LESSOR harmless from any claims LESSEE may have as a result of said License termination and termination of maintenance and support services.

In the event a maintenance agreement is covered under the LEASE, LESSEE acknowledges that LESSOR shall have no obligation for the performance of such maintenance and LESSEE furthermore shall hold LESSOR harmless from any claims relating to such maintenance agreement.

All Property description items shall be deemed to be personal property for all purposes under the LEASE.

LESSEE hereby further represents, confirms, and warrants that in the event Licensor/Vendor fails to provide support, service or maintenance or LESSEE is dissatisfied with the support, service or maintenance performed by Licensor/Vendor, LESSEE recognizes that such events shall not affect LESSEE'S payment and other obligations under the LEASE. LESSEE agrees that it will not seek any relief from LESSOR as a result of the failure of Licensor/Vendor to perform such support, service or maintenance.

COMMENCEMENT DATE
The Commencement Date shall be the first day of the month following the Installation Date (as defined herein). Charges from the Installation Date to the Commencement Date shall be computed by converting the monthly or other calendar period rental to a daily rate based on a 30-day month. LESSOR assumes no responsibility for costs associated with returning non-acceptable Equipment, and LESSEE agrees to pay, on demand, any and all such costs.

If the Installation Date for this Property Schedule occurs on or after November 23, 2006 and if, on said Installation Date there is a greater than twenty five (25) basis point difference between the yield of United States Treasury Obligations for a comparable term of the LEASE as published in the Wall Street Journal and this Property Schedule's assigned base rate, LESSOR may adjust the monthly equivalent rent by applying an adjusted monthly lease rate factor to the Property cost. Therefore, in the event of such an adjustment, this Property Schedule's base monthly lease rate factor of .02344 shall be adjusted by .033 percent for each twenty-five (25) basis point difference between the aforementioned Treasury Obligation rate and this Property Schedule's assigned base rate. Pro-rata adjustments will be made for fractional changes thereof. This Property Schedule's assigned base rate is 4.72 percent.

IN WITNESS WHEREOF, LESSOR and LESSEE have caused this Property Schedule to be signed by their respective duly authorized representatives.

| LESSOR | LESSEE |
|---|---|
| AEL Financial, LLC | Lippel Petroleum, Inc. |
| By _____ | By √ _____ |
| Name   JAMES G BAILEY | Name    Larry E. Lippel |
| Title   President | Title    President |
| Date   1/5/07 | Date √  11/21/06 |

ADDENDUM "A"
TO
PROPERTY SCHEDULE NO. 3
TO
MASTER LEASE AGREEMENT DATED AS OF June 21, 2006
BETWEEN
AEL Financial, LLC, AS LESSOR
AND
Lippel Petroleum, Inc., AS LESSEE

LESSOR and LESSEE hereby agree to modify Property Schedule No. 3 only as follows:

Upon expiration of the initial lease term, and assuming that no default has occurred and is continuing, LESSEE may purchase LESSOR'S interest in the Lease Property on an as is where is basis with no warranties expressed or implied for a sum equal to one dollar ($1.00), plus all applicable taxes. LESSEE must tender payment within ten (10) days subsequent to the end of the initial lease term.

All other terms and conditions of Property Schedule No. 2 remain intact and unchanged.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "A" as of
√ 11/21                    , 2006.

Lessor: AEL Financial, LLC

By: _____

Name: JAMES G BAILEY

Title: PRESIDENT

Lessee: Lippel Petroleum, Inc.

By: √ _____

Name: Larry E. Lippel

Title: President

GATOR PETROLEUM    Fax:239-639-1791    Feb 26 2007 10:12am P002/002

## CERTIFICATE OF ACCEPTANCE

TO:     AEL FINANCIAL, LLC
        600 North Buffalo Grove Road
        Buffalo Grove, IL 60089

Re:     Property Schedule No. 3 to Master Lease Agreement dated as of June 21, 2006 between AEL Financial, LLC as ("LESSOR") and Lippel Petroleum, Inc., as ("LESSEE").

VENDOR(s): Softrim Data Solutions and DM Software, Inc.

PROPERTY DESCRIPTION:

As per Exhibit "A"-2 pages attached hereto and made a part hereof

LOCATION: 525 Nesbit Street, Punta Gorda, FL 33950

We, the LESSEE, certify that the Property described above was delivered to and installed at the Property location in good order and condition and acceptable to us, is ready for its intended use as of the date hereof, and is acceptable for maintenance by the maintenance provider, and the quantity, description and serial numbers are correct. The decals, labels, etc., if required and supplied, have been affixed to the above items. We approve payment by you, the LESSOR, to the Vendor for the Property as well as all services described above. We further certify that you have fully and satisfactorily performed all covenants and conditions to be performed by you under the Lease, and shall hold you harmless for any failure on the part of the Vendor to perform to our satisfaction.

This will advise that we are aware of our obligations hereunder and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the Vendor to us. LESSEE certifies that the above referenced Property was placed in service on √ 02-26-07 , 2007 and agrees that said date shall be deemed to be the Installation Date under the Lease.

Very truly yours,

Lippel Petroleum, Inc.

By: √ _Larry E. Lippel_

Name: _____ Larry E. Lippel

Title: _____ President

26th day of Feb. 2007

KELLIE A. SCHREPP
Notary Public - State of Florida
My Commission Expires Jun 6, 2008
Commission # DD326251

Kellie Schrempp - Exp. 6-6-08
Kellie A. Schrempp Commission # DD326251
Charlotte County. Florida

EXHIBIT E

AEL FINANCIAL, LLC

## GUARANTY

LESSEE: _____ Lippel Petroleum, Inc.

For value received, receipt whereof is hereby acknowledged, and to induce AEL Financial, LLC (hereinafter called the "Lessor") to enter into a Master Lease Agreement dated as of June 21, 2006, (which together with any and all Property Schedules, addenda and exhibits, etc. shall hereinafter be called the "Lease") between Lessor and the above captioned Lessee, the undersigned (and each of them if more than one hereinafter called the "Guarantor") hereby jointly and severally unconditionally guarantee and promise to Lessor that Lessee will promptly perform and comply with each of its obligations contained in the Lease, and that all sums payable by the Lessee under the Lease will be promptly paid when due in accordance with the Lease and that if Lessee fails at any time to pay promptly any and all indebtedness which now exists and/or may hereafter accrue from Lessee to Lessor as same becomes due or in the event that Lessee fails to perform any obligations, monetary or otherwise, under the Lease the Guarantor promises to pay any and all the indebtedness from Lessee to Lessor and to perform any obligation, monetary or otherwise, under the Lease forthwith, upon demand together with all expenses incurred in enforcing payment under this instrument including reasonable attorney's fees.

The Guarantor hereby consents that at any time without notice to the Guarantor, the time for the Lessee's performance of or compliance with any of its obligations contained in the Lease may be extended, or modified or the performance or compliance may be waived by the Lessor; the Lease may from time to time be amended for the purpose of adding any provision thereto or changing in any manner the rights of Lessor or of Lessee thereunder, payment of any sums due or to become due under the Lease may be extended, in whole or part; and the terms of the Lease may be waived by the Lessor in its sole discretion, all without affecting the liability of the Guarantor hereunder.

Lessor may take from Lessee any new or additional or substituted security from time to time without in any way impairing the obligation of the Guarantor, nor shall the impairment of the security which Lessor may from time to time hold from Lessee in any way operate to discharge the Guarantor in whole or in part.

Lessor may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of or security for, all or any part of the obligations of Lessee under the Lease and notwithstanding any action taken or omitted to be taken by Lessor to enforce any of its rights or remedies under any other guaranty or with respect to any other security, or any payment received thereunder, and the Guarantor shall not be subrogated, in whole or in part, to the rights of Lessor against Lessee under the Lease until Lessor shall have been paid in full all the sums as are at any time payable by Lessee under the Lease.

Forbearance on the part of Lessor to take steps to enforce payment of any indebtedness held by it against Lessee arising from Lessee's default in any respect whatsoever, shall in no way release the Guarantor and Guarantor shall remain liable hereunder for the prompt payment of all obligations of Lessee to Lessor and all renewals thereof or substitutions therefore and all other indebtedness which may now exist and/or may hereafter accrue from Lessee to Lessor.

Lessor may assign this instrument or any rights and powers hereunder with any assignment of the Lease or any sums due or to become due, or any rights, claims, powers and remedies thereunder and, in the event of assignment, the assignee shall have the same rights and remedies as if originally named herein.

Guarantor hereby waives diligence, presentment of any instrument, protest and notice of nonpayment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law and notice of the creation or accrual of any of the obligations of Lessee to Lessor under the Lease and all demands whatsoever.

Lessee's obligations, and each of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the undersigned are joint and several, and are independent of the obligation of Lessee. The Guarantor waives all rights which it either now has or may hereinafter have by statute or otherwise to require Lessor to institute suit against Lessee or to exhaust its rights or remedies against Lessee, the Guarantor being bound to the payment of each and all indebtedness of Lessee to Lessor whether now existing or hereafter accruing, as fully as if the indebtedness or obligation was directly owing to Lessor by Guarantor and as fully as if Guarantor was a joint obligor with Lessee under the Lease. A separate action or actions may be brought and prosecuted against Guarantor whether an action is brought against Lessee or whether Lessee be joined in the action or actions.

This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment irrespective of the validity, or enforceability of (i) the obligation of Lessee to Lessor as aforesaid or (ii) the Lease or (iii) any security (de jure or de facto) or any agency thereof purporting to reduce, amend or otherwise affect any obligation of Lessee or other obligor or to vary any terms of